# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ACQIS LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>            Defendant. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Case No. 6:11-CV-546<br>**Jury Trial Demanded** |

Plaintiff ACQIS LLC ("ACQIS") complains against Defendant International Business Machines Corp. ("IBM") as follows:

## THE PARTIES

1. Plaintiff ACQIS is a limited liability corporation organized under the laws of Texas, with a principal place of business at 411 Interchange Street, McKinney, Texas 75071.

2. Defendant IBM is a corporation organized under the laws of New York, having its principal place of business in Armonk, New York.  IBM's agent for service of process in Texas is CT Corporation System, 350 North St. Paul St., Suite 2900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. IBM is subject to this Court's personal jurisdiction because it does and has done

substantial business in Texas, including: (i) making, using, and/or selling infringing goods; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods used or consumed by, and services provided to, persons in the state of Texas and in this judicial district.  In addition, IBM has designated an agent for service of process in the state of Texas.  Accordingly, IBM has established minimum contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## THE PATENT-IN-SUIT

7. On October 18, 2011, United States Patent No. 8,041,873 ("the '873 Patent") entitled "Multiple Module Computer System and Method Including Differential Signal Channel Comprising Unidirectional Serial Bit Channels to Transmit Encoded Peripheral Component Interconnect Bus Transaction Data" issued to William W.Y. Chu.  (A copy of the '873 Patent is attached hereto as Exhibit A.)  The entire right, title and interest to the '873 Patent has been assigned to ACQIS, including the right to enforce the '873 patent and obtain legal and equitable relief for infringement.

## BACKGROUND REGARDING PRIOR LITIGATION

8. In April 2009, ACQIS filed suit in this district against IBM and ten others, accusing defendants' blade server products of patent infringement.  (Complaint, *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-CV-148-LED (E.D. Tex. April 4, 2009) ("the prior litigation").)  IBM was the only defendant remaining when the case was tried in February 2011.  At trial, the jury found that IBM infringed all of the patent claims presented, and that none of the presented claims

are invalid.  A true and correct copy of the Verdict Form is attached as Exhibit B.  The Court entered a Final Judgment in accordance with the jury's verdict.  A true and correct copy of the Final Judgment is attached as Exhibit C.

9. The Court has yet to rule on four post-trial motions in the prior litigation: ACQIS's Motion for Permanent Injunction (Dkt. 673), ACQIS's Motion for an Ongoing Royalty (Dkt. 676), IBM's Opposed Motion to Dismiss Abandoned Claims and Amend the Judgment (Dkt. 678), and IBM's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial Regarding Invalidity. (Dkt. 681.)  The instant complaint does not accuse any IBM products at issue in the prior litigation.  Unless the Court overturns the jury's verdict regarding patent validity, the products found to infringe in the prior litigation will either be subject to a compulsory license or an injunction, rendering moot any further infringement claims against those products by ACQIS.

10. The technology and  patent claims asserted in the instant matter are very similar to those at issue in the prior litigation.  The '873 Patent is a continuation of U.S. Application No. 12/077,503 filed March 18, 2008, now U.S. Patent 7,676,624, which is a continuation of U.S. nonprovisional Application No. 11/166,656 filed June 24, 2005, now U.S. Patent No. 7,376,779.  U.S. Patent No. 7,376,779 is one of the patents asserted at trial in the prior litigation.  In the prior litigation the patents-in-suit covered blade server products utilizing Peripheral Component Interconnect Express ("PCIe") technology.  In the instant matter the asserted claims of the '873 Patent cover a much broader range of server forms utilizing PCIe technology, including rack and tower server products.

## RACK SERVERS

11. There are two types of products at issue in this case, rack servers and tower

servers.  A rack server is a modular computing system designed to be mounted into a rack and connected to a network.  A single rack can support multiple rack servers in one of many server bays, or slots, in the rack.  By populating a single rack with multiple servers, a rack server system allows the user to increase computing power while saving floor space.  In addition, the open design of a rack system allows for efficient cooling and easy access to the servers, cables, drives, and network components to perform maintenance or otherwise manage the system.

12.     IBM's rack server products include at least the System x Rack Server Systems, eX5 Rack Server Systems, System x iDataPlex Systems, and Power System Rack Server Systems.  IBM makes, uses, offers to sell, and/or sells rack server products in the United States, including at least the System x Rack Server Systems, eX5 Rack Server Systems, System x iDataPlex, and Power System Rack Server Systems.

## TOWER SERVERS

13.     A tower server is a computing system that is designed to be housed in a free standing upright chassis, or tower.  In a tower server, the motherboard is placed inside the tower which also houses other necessary components such as power supplies, hard drives and cable connections.  Tower servers can also be configured for placement in a rack with other servers and network components to save floor space.  Compared to rack servers, tower servers are less expensive and do not require the additional equipment and special cooling measures that rack server systems require.  However, tower servers are not capable of the computing power density that rack servers can provide.

14.     IBM's tower server products include at least the System x Tower Server Systems and Power System Tower Server Systems.  IBM makes, uses, offers to sell, and/or sells rack server products in the United States, including at least the System x Tower Server Systems and

Power System Tower Server Systems.

## ACQIS IS SUFFERING IRREPARABLE HARM

15. A permanent injunction against further infringement by IBM is warranted because ACQIS will suffer irreparable harm as a result of IBM's infringement of the '873 Patent, remedies at law are insufficient to compensate ACQIS for the harm IBM's infringement will cause, the balance of hardships between ACQIS and IBM favors the issuance of a permanent injunction, and the public interest would be served by permanently enjoining IBM's infringement.

## FIRST CAUSE OF ACTION
## (INFRINGEMENT OF THE '873 PATENT)

16. ACQIS realleges and incorporates by reference the allegations contained in paragraphs 1 – 15.

17. ACQIS is the sole holder of the entire right, title and interest in the '873 Patent.

18. On information and belief, IBM directly infringes one or more of the claims of the '873 Patent by, without authorization, making, using, offering to sell, selling, and/or importing into the United States infringing systems, including without limitation System x Rack Server Systems x3250, x3550, x3620, x3630, x3650, and x3755; System x Tower Server Systems, x3100, x3200, x3400, and x3500; eX5 Rack Server Systems x3690, x3850, and x3950; System x iDataPlex Systems; Power System Rack and Tower Server Systems 710, 720, 730, 740, 750; and Power Server Systems, 770 and 780. These products are covered by, without limitation, one or more of claims 44, 46, 47, 80, 82, 94, 95, 101, 102, and 103 of the '873 Patent.

19. As a result of the infringement of the '873 Patent by IBM, ACQIS has suffered irreparable harm for which ACQIS has no adequate remedy at law. Unless enjoined by this Court, this infringement will continue and will result in further irreparable harm to ACQIS.

20.     ACQIS is entitled to recover damages from IBM not less than a reasonable royalty adequate to compensate for the infringement.

## DEMAND FOR RELIEF

WHEREFORE, ACQIS respectfully requests the following relief:

a)     That this Court adjudge and decree that IBM has been and is currently infringing the '873 patent;

b)     That this Court enter an order that IBM and its officers, agents, servants, employees, successors and assigns, and those persons acting in concert with them, be preliminarily and permanently enjoined from infringing, inducing others to infringe, and committing acts of contributory infringement with respect to the '873 patent;

c)     That this Court award damages to ACQIS to compensate it for each of the unlawful actions set forth in ACQIS' complaint;

d)     That this Court award pre-judgment and post-judgment interest on such damages to ACQIS and order an accounting of damages that accrue between the close of fact discovery and the date a final judgment is entered in this litigation;

e)     That this Court determine that this patent infringement case is exceptional and award ACQIS its costs and attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285; and

f)     That this Court award such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

ACQIS respectfully requests a trial by jury on all issues triable thereby.

7.

Dated:  October 18, 2011

Respectfully submitted,

   */s/   James P. Brogan*

James P. Brogan
Wayne O. Stacy, State Bar #24008070
COOLEY LLP
380 Interlocken Crescent, Ste. 900
Broomfield, CO  80021-8023
Telephone:     (720) 566-4000
Facsimile:      (720) 566-4099

Thomas J. Friel, Jr.
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

364402 v1/CO